UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOSEPH BERGERON,** <br><br> Plaintiff, <br><br> v. <br><br> **TOWER LOAN OF MISSISSIPPI, LLC** <br><br> Defendants. | Civil Action No.: <br><br> **Jury Trial Demanded** |

# COMPLAINT

COMES NOW Plaintiff, Joseph Bergeron, by and through his undersigned counsel and files this lawsuit, arising under the Fair Labor Standards Act ("FLSA") and the laws of Louisiana for breach of contract, quantum meruit, unjust enrichment and abuse of right against Defendant Tower Loan of Mississippi, LLC, pursuant to and consistent with the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq., as amended, for overtime violations, unlawful deductions resulting in minimum wage violations, breach of contract, quantum meruit, unjust enrichment, abuse of right, and penalty wages.

## I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over the federal claims asserted in this action under 28 U.S.C. §§1331, 1332, 1337, 1338, 1343(a) (4) 1367.

2. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b), as Defendant is foreign corporations who conduct business in this District and as a substantial part of the events or omissions giving rise to the claims that occurred in this District.

3. Plaintiff asserts state based claims under the supplemental jurisdiction of this court, pursuant to 28 U.S.C. §1367, to hear and decide claims arising under the laws of the State of Louisiana. Jurisdiction is specifically conferred on the Court by 42 U.S.C. §2003-5(g).

## II.  STATEMENT OF CLAIMS

4. The instant lawsuit is for relief for Defendant's violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq., as amended, as well as Louisiana Wage Payment Act, La. R.S. 23:631, breach of contract, quantum meruit, unjust enrichment, and abuse of right.

## III.  PARTIES

5. Plaintiff Joseph Bergeron (hereinafter "Plaintiff" or "Plaintiff") is a resident of Lafayette Parish, Louisiana (within this District), and was employed at Defendant's office located at 4416 Johnston St Ste 7A, Lafayette, LA 70503 (within this District).

6. Plaintiff was employed by Defendant Tower Loan of Mississippi (hereinafter "Defendant").

7. Plaintiff is covered by §§ 203, and 207 of the FLSA for the period in which he was employed by Defendant.

8. Defendant Tower Loan of Mississippi, LLC is a foreign corporation with its principal place of business at 406 Liberty Park Court in Flowood, MS. 39232.

9. Defendant conducts business within this State and District, and at all times relevant to this lawsuit is a private business entity that manages employees, such as Plaintiff. As

such, Defendant is subject to the jurisdiction of this Court. Defendants may be served process to their registered agent, Dean P. Cazenave at 400 Convention Street, Suite 700, Baton Rouge, LA 70802.

10. Defendant is an employer as defined by § 203(d) of the FLSA. Defendant is subject to the provisions of the Fair Labor Standards Act of 1938, as amended, and the laws of the state of Louisiana.

11. Plaintiff was, at all times relevant to this action, an "employee" of the Defendant as defined at § 203(e)(1) of the FLSA, and is entitled to the protections provided thereunder.

12. Defendant was provided an opportunity to resolve the concerns described herein prior to the filing of this lawsuit.

## IV. GENERAL ALLEGATIONS

13. Mr. Bergeron was employed by Defendant as a "Manager Trainee" at their office in Lafayette, Louisiana.

14. Mr. Bergeron's employment commenced on June 8, 2021 and ended January 19, 2022.

15. Mr. Bergeron was promised an hourly rate of $15 to be paid on a bi-weekly basis. Upon hire, and throughout the course of his employment, Mr. Bergeron was paid $13.42 per hour.

16. Mr. Bergeron began working overtime in July of 2021 at the request of his immediate supervisor, Ms. Keri Wheeler. Mr. Bergeron was instructed to study at home for an exam. The purpose of the exam was for Mr. Bergeron to obtain his Louisiana Commissioner of Insurance Certification. *See U.S. Department of Labor's Opinion Letter* FLSA 2009-13 and FLSA 2009-15 (DOL confirmed that required study for required training – even

when the studying occurs outside of the normal work day – is nonetheless compensable time.)

17. Ms. Wheeler printed and provided Mr. Bergeron with thirteen (13) chapters of reading materials and directed Mr. Bergeron to "study these at home and be prepared for a chapter test." She also directed him to study material available online and advised him to be prepared for an exam in two (2) weeks. Mr. Bergeron was not compensated for any of the hours he spent preparing for the exam.

18. At his supervisor's direction, Mr. Bergeron studied at home for a total of 30 hours over a 2 week period and is entitled to payment for those hours.

19. Throughout the course of his employment, Mr. Bergeron missed only 2 days of work which were September 13th and October 19th.

20. Mr. Bereron's pay statements indicate he worked over 40 hours most weeks he was employed. He received straight pay or half pay for all overtime hours worked.

21. Because Mr. Bergeron earned a commission during some weeks, his overtime should have been calculated based on all wages earned, including commissions. Defendant did not include Mr. Bergeron's commission in the base calculation of his overtime payments.

22. In total, Mr. Bergeron performed approximately 194 hours of overtime, for which he was not properly compensated.

23. Mr. Bergeron is unequivocally entitled to full payment for his hours worked and he does not qualify for any of the recognized exemptions from the protections of FLSA.

24. For the sole benefit of his employer, Mr. Bergeron drove fifty (50) to sixty (60) miles per day performing field calls and was compensated twenty-one (21) cent per mile.

25. The IRS mileage rate for 2021 was 56 cents per mile, which was the rate Mr. Bergeron should have received compensation for his mileage.

26. While performing his field calls on December 11, 2021, Mr. Bergeron's vehicle was damaged by a hit and run driver.

27. Defendant is in possession of photographs of the damage to Mr. Bergeron's vehicle.

28. Defendant is in possession of a tow truck receipt dated December 11, 2021, supporting that damage to Mr. Bergeron's vehicle was so extensive that it was inoperable and had to be towed to a repair shop.  (See attached as Ex A - Tow Receipt).

29. Defendant is in possession of repair estimates dated the week of the accident, indicating significant damage to the front end and under carriage of Mr. Bergeron's vehicle.

30. Page 4 of a Police Report in Defendant's possession confirmed that Plaintiff's vehicle had to be towed due to damage. (See attached as Ex B- Police Report).

31. Between December 15th and December 31st, Mr. Bergeron spent $2,092.65 attempting to return his vehicle to operable condition.

32. Mr. Bergeron's total pay for the affected pay period was $1,908.76.

33. Defendant's failure to cover work-related damages to Plaintiff's vehicle resulted in expenses constituting a $2,092.65 reduction in his wages.  The reduction caused a minimum wage violation as Mr. Bergeron's effective hourly rate  dropped to less than $0.00, due to the expense of the vehicle repairs.

34. When you account for deductions that reduced his effective hourly rate to less than $0.00 per hour, Mr. Bergeron worked 111 hours for less than minimum wage.

35. Mr. Bergeron is therefore entitled to minimum wages for that pay period, in addition to full payment of those expenses for a total of $2,092.65.

36. On or about December 13, 2021, Mr. Bergeron complained to his supervisor about the company owing him money for reimbursement of his vehicle repair costs.

37. Mr. Bergeron's direct supervisor stated that he qualified for reimbursement once he submitted the repair quotes, which he promptly submitted on December 23, 2021.

38. After the quotes were submitted, Tower refused Mr. Bergeron's demand for payment.

39. Between December 23, 2021 and January 20, 2019, Mr. Bergeron complained to the same supervisor at least three additional times about not being reimbursed for my repair expenses.

40. Defendants' failure to pay Mr. Bergeron the appropriate amounts on his regularly scheduled paydays violates the Fair Labor Standards Act.

41. FLSA requires employers pay overtime for hours worked in excess of forty (40) in a workweek of at least one and one-half times their appropriately calculated regular rates of pay. Accordingly, Mr. Bergeron is unequivocally entitled to full payment for overtime hours worked, and he does not qualify for any of the recognized exemptions from the protections of FLSA.

42. Mr. Bergeron did not supervise any employees and had no authority to hire, fire, promote or discipline employees.

43. Mr. Bergeron's work did not involve the performance of duties directly related to management or general business operations. To the extent that his work required any judgment at all, his judgment was limited to choices within set policies or guidelines.

44. Mr. Bergeron was paid an hourly non-exempt rate during the entire course of his employment, and regularly worked more than 40 hours a week.

45. Defendants deliberately avoided paying Mr. Bergeron his full compensation earned by refusing to pay overtime rates at 1.5 times his hourly rate, failing to maintain minimum wage requirements and failing to adequately reimburse for mileage for miles driven during the course and scope of Defendant's business.  This practice is illegal under the Fair Labor Standards Act.

## V.   CAUSES OF ACTION

### COUNT ONE
### FAILURE TO PAY OVERTIME
### §§ 203 and 207 of the FLSA

46. Plaintiff reasserts and incorporates herein each and every allegation in the preceding paragraphs of this Complaint as if set forth fully in this count of the Complaint.

47. By its actions alleged herein, Defendants willfully, knowingly and/or recklessly violated the FLSA provisions and corresponding federal regulations as detailed herein, by failing to properly pay overtime wage compensation to Plaintiff in accordance with §§ 203, and 207 of the FLSA. See also *Hills v. Entergy Operations, Inc.*, 866 F.3d 610, 614 n.13 (5th Cir. 2017) ("overtime compensation due to employees must be computed on the basis of

the hourly rate derived [from commissions].. and, therefore, it is necessary to compute the regular hourly rate of such employees during each workweek.")

48. Plaintiff was not an exempt employee under the FLSA.

49. Defendant erroneously paid Plaintiff at a half time rate for a portion of the overtime hours worked. Plaintiff was not employed and operating under a fluctuating work week and is not entitled to half-time pay for overtime hours. To use the fluctuating-workweek method, employees' hours must change on a week-to-week basis, and employees must receive a fixed salary even when they work less than their regularly scheduled hours. See *Black v. SettlePou, P.C.*, 732 F.3d 492, 498 (5th Cir. 2013).

50. Plaintiff's pay stubs support that he never received salary, let alone a fixed salary.

51. Plaintiff's pay stubs show that his compensation was measured in the number of hours he worked - not a fixed salary.

52. Plaintiff's bi-weekly compensation varied with the number of hours he worked.

53. Each entry of "Regular Salary" on his pay stubs has a different amount each pay period which corresponds to the number of hours he worked, which further confirms that he was not paid a fixed salary.

54. Plaintiff's offer letter supports that he did not share Defendant's understanding of how he would be compensated. Plaintiff reasonably read the letter to mean that his additional hours worked beyond forty would be compensated at the rate of time and half, as required by law. (See attached as  Ex C - Offer Letter)

55. Plaintiff's offer letter clearly makes no mention of paying him at a half time rate for overtime hours, and does not state that he would be paid overtime at the half time rate after working 40 hours.

56. Plaintiff's offer letter referenced an "average" (not fixed) weekly pay of $577.00, however Defendant's pay records show that he was paid less than $577.00, on at least two occasions November 1, 2021 and January 17, 2022). See attached as Ex D ([Pay Records](Pay Records)) *See in McCumber v. Eye Care Ctr. of Am., Inc.*, 2011 WL 1542671 (M.D.La. Apr. 20, 2011) (finding that because plaintiff's pay had been reduced twice, "no sincere argument may be made by defendants that its intention was to pay plaintiff a set salary regardless of the hours he worked in a given week, as required for the application of the FWW method.")

57. Plaintiff's pay stubs reference a "guaranteed pay" which was not paid at a fixed amount. *See In O'Brien v. Town of Agawam,* 350 F.3d at 288-90. By the plain text of § 778.114, "it is not enough that the [employees] receive a fixed minimum sum each week." The regulations refer to a "fixed amount" and a "fixed salary," not a minimum or base salary. See 29 C.F.R. § 778.114(a).

58. Since the fixed salary and mutual understanding elements were not met, Defendant can not legally apply the FWW method of compensation and he is therefore due compensation for all of the overtime hours he worked. *See U.S. Department of Labor 's Opinion Letter FLSA* 2020-14.

59. FWW is also inapplicable because Defendant did not pay Plaintiff an amount of half his regular pay rate as an overtime premium for all hours worked over 40. See 29 C.F.R. § 778.114(a).

60. Plaintiff's pay records show that he worked a total of 163.98 overtime hours and was only paid for 79.83 of those hours. If he was paid a half time rate for each of the 163.98 hours, he would have earned a total of $1,107.02. Instead, Plaintiff only received a total of $542.37.

61. Defendants deliberately avoided paying Plaintiff his full compensation earned by refusing to pay overtime rates at 1.5 times Plaintiff's hourly rate. *See Perez v. Mortgage Bankers Ass'n,* 575 U.S. ___ (2015) categorizing loan officers as non-exempt employees.

62. Defendant was aware that it could not lawfully deny Plaintiff his appropriately calculated overtime wages.

63. Defendant has not made a good faith effort to comply with the FLSA with respect to Plaintiff's overtime compensation.

64. As a result of Defendants' violations of the FLSA, Plaintiff suffered damages by failing to receive overtime compensation in accordance with §§ 203, and 207 of the FLSA.

65. As a result of the unlawful acts of Defendant, Plaintiff was deprived of overtime compensation in an amount to be determined at trial, and is entitled to recovery of such amounts, liquidated damages, pre- and post-judgment interest, costs, attorneys' fees, and other relief.

**COUNT TWO
UNLAWFUL DEDUCTIONS RESULTING
IN FAILURE TO PAY MINIMUM WAGE
§§ 203 and 206 of the FLSA**

66. Plaintiff reasserts and incorporates herein each and every allegation in the preceding paragraphs of this Complaint as if set forth fully in this count of the Complaint.

67. By its actions alleged herein, Defendants willfully, knowingly and/or recklessly violated the FLSA provisions and corresponding federal regulations as detailed herein by making unlawful deductions in the form of unreimbursed expenses that were for the sole benefit of Defendant resulting in a reduction in Plaintiff's wages to below minimum wage, which is in clear violation of §§ 203, and 206 and 531.3 of the FLSA. *See Taylor v. AmSpec, L.L.C.*, CV H-14-1730, 2017 WL 2463624, at *4 (S.D. Tex. June 7, 2017) (employers must either reimburse employees the total costs of all expenses incurred or reimburse employees at the IRS mileage rate.)

68. Defendant was aware that it could not lawfully act as the sole beneficiary to Plaintiff's expenses and allow those expenses to reduce Plaintiff's wages below the federal minimum wage.

69. The US. Department of Labor has clarified the compensation requirements for employee wage deductions in its DOL Opinion Letter FLSA 2020-12 (August 31, 2020), stating the following:

> *The FLSA requires covered employers to pay nonexempt employees no less than the federal minimum hourly wage for all non-overtime hours actually worked in a given workweek. 29 U.S.C. § 206. Employees must receive these wages "free and clear." 29 C.F.R. § 531.35. An employee's wages include the "reasonable cost" of "board, lodging, or other facilities" that primarily benefit the employee, and therefore the reasonable cost of such items count towards satisfying an employer's obligation to pay the minimum wage. 29 U.S.C. § 203(m). But the cost of "other facilities" that are primarily for the benefit or convenience of the employer cannot be counted as wages. 29 C.F.R. § 531.3(d). Those costs include tools of the trade,*

11

>*required uniforms—or required use of a personal vehicle. An employer violates the FLSA "in any workweek when the cost of such tools" (and the like) "cuts into the minimum or overtime wages required to be paid...." Id. § 531.35. Therefore, an employer violates the FLSA if the employee's wages, minus expenses, end up below the federal minimum wage for a given non-overtime workweek. See id.; see also id. §§ 531.3(d), 531.36(b).*

DOL Opinion Letter FLSA 2020-12 at p 2 (August 31, 2020),

70. Plaintiff incurred costs associated with the required use of his personal vehicle for Defendant's benefit, which cut into the minimum wages required to be paid.

**COUNT THREE
PENALTY WAGES
La. R.S. 23:631**

71. Plaintiff reasserts and incorporates herein each and every allegation in the preceding paragraphs of this Complaint as if set forth fully in this count of the Complaint.

72. Despite Plaintiff's repeated demands for payment on three separate occasions, starting December 13  2021, Defendant failed to pay Plaintiff for all hours worked, failed to adequately pay for all overtime hours worked, failed to reimburse for employer expenses resulting in minimum wage violations and breached its contractual obligations with Plaintiff regarding his hourly rate to be paid.

73. Courts have liberally construed what constitutes a demand for unpaid wages under the Louisiana Wage Payment Act, and have found that even an oral demand made in person or by telephone is sufficient. *See Hattaway v. Health Paradigm, LLC*, 45,047 (La. App. 2 Cir. March 3, 2010), 31 So. 3d 1176, 1180, writ denied, 2010-0691 (La.

May 28, 2010), 36 So. 3d 251 (rejected employer's claim that an employee's oral request for payment, lacking a specific amount due, absolved employer from liability under the penalty provision of La. R.S. 23:631, even though Defendant paid the employee five months later after receiving a written demand).

74. Pursuant to that Louisiana Wage Payment Act, La. R.S. 23:631, Plaintiff is also entitled to (90) ninety days of penalty wages at his daily rate of pay. Throughout the duration of his employment, his hourly rate of pay was $15.00, which would calculate to a daily rate of pay of $150 based on his 10 hour work day. Therefore, Plaintiff is entitled to ninety days of wages at $150 per day, for total penalty wages of $13,500.

75. Plaintiff also seeks to recover from Defendants the expenses of this litigation, including but not limited to reasonable attorney's fees and costs pursuant to 42 U.S.C §1988(b).

## COUNT FOUR
## BREACH OF CONTRACT

76. Plaintiff incorporates all allegations contained in the foregoing paragraphs, as set forth herein and states:

77. Defendant entered into valid and enforceable contracts to pay the Plaintiff for all hours worked.

78. Plaintiff was to be paid the specified rate identified on their pay records for each hour worked.

79. Plaintiff performed work on behalf of Defendant as agreed, but Defendant failed to pay the wages it was required to pay as a result of the policies identified above.

80. Defendant had both actual and constructive knowledge that Plaintiff performed work without full payment of his overtime.

81. The Plaintiff performed the work at Defendants' direction and for Defendants' benefit.

82. Defendants breached its employment contract with Plaintiff when it agreed to pay him $15.00 per hour and failed to do so.

## COUNT FIVE
## QUANTUM MERUIT

83. Plaintiff reasserts and incorporates herein each and every allegation in the preceding paragraphs of this Complaint as if set forth fully in this count of the Complaint.

84. Valuable services were rendered to Defendant by Plaintiff and similarly situated employees. The services were accepted, used and enjoyed by Defendant.

85. A reasonable person would have expected to compensate Plaintiff for such use and enjoyment.

86. Plaintiff had a reasonable expectation of receiving compensation for the services which were rendered.

## COUNT SIX
## UNJUST ENRICHMENT

87. Plaintiff reasserts and incorporates herein each and every allegation in the preceding paragraphs of this Complaint as if set forth fully in this count of the Complaint.

88. Defendant has been unjustly enriched at the expense of Plaintiff by failing to pay for work performed by Plaintiff.

89. Defendant knowingly and/or intentionally accepted the benefit of the work performed by Plaintiff, despite its policy and practice of failing to pay Plaintiff for such work.  In particular, Defendants received the benefit of the labor and services provided by Plaintiff.

90. There is a connection between enrichment and the resulting impoverishment.

91. There is no justification or good cause for the enrichment and the resulting impoverishment.

92. Such conduct demonstrates bad faith and undue advantage on the part of Defendants.

93. It would be unjust and inequitable for Defendants to retain the benefit of the unpaid work performed by Plaintiff.

## COUNT SIX
## ABUSE OF RIGHT

94. A fundamental component of the employee-employer relationship is the employer's right to control an employee's work.  Defendant exercised that right when it instructed Plaintiff to study at home for an exam.

95. Defendant abusely exercised its right to determine which work assignments Plaintiff would perform because it had no intention of paying Plaintiff for his study time, as required by federal law.

96. Defendant had no serious or legitimate motive for refusing to pay Plaintiff for all of the hours he worked he performed, and the refusal is against moral rules, good faith, or elementary fairness

97. Defendant's rights were exercised for a purpose other than that for which it is granted and to the detriment of Plaintiff simply for the sake of exercising it.

## PRAYER FOR RELIEF

98. Wherefore, Plaintiff prays that process is issued according to law and demands judgment against Defendants as follows:

   a. All damages that may be awarded under FLSA, and Georgia law; general compensatory damages including but not limited to damages for mental and emotional distress plus interest;

   b. Special damages;

   c. Injunctive relief preventing and prohibiting Defendants from engaging in its present practices in violation of the laws cited herein;

   d. Reasonable attorney's fees and expenses and costs pursuant to 42 U.S.C. §1988;

   e. Unpaid overtime compensation for work performed, an equal amount of liquidated damages including, reasonable attorneys' fees, litigation costs, and other appropriate relief pursuant to 29 U.S.C. § 216(b).

   f. Such other and further and different relief as this court deems just and appropriate.

Respectfully submitted this x th day of August, 2022.

/S/ Craig B. Mitchell Esq.
Craig B. Mitchell (LSBA #24565)
Mitchell & Associates
615 Baronne Street, Suite 300
New Orleans, Louisiana 70113
T:  (504) 527-6433
Craig@2hurt2work.com


/S/ Arnold J. Lizana

>Law Offices of Arnold J. Lizana III
>*(APPLYING TO BE ADMITTED PRO HAC VICE)*
>1175 Peachtree Street NE, 10th Floor
>Atlanta, GA 30361
>Tel./Fax 877-443-0999
>alizana@attorneylizana.com

>**ATTORNEYS FOR PLAINTIFF**